# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
### CAMDEN VICINAGE

|  |  |
|---|---|
| VANESSA T-H.,[1]<br><br>   Plaintiff,<br><br> v.<br><br>COMMISSIONER OF SOCIAL<br>SECURITY,<br><br>   Defendant. | Civil No. 23-2293 (RMB)<br><br>**OPINION** |

**APPEARANCES:**

BROSS & FRANKEL, P.A.
By: Jennifer L. Stonage
725 Kenilworth Avenue
Cherry Hill, New Jersey 08002

  *On behalf of Plaintiff*

SOCIAL SECURITY ADMINISTRATION
Office of the General Counsel
By: Melissa Kay Curry
6401 Security Boulevard
Baltimore, Maryland 21235

  *On behalf of Defendant*

---

[1] Due to the significant amount of personal information and privacy concerns in Social Security cases, non-governmental parties are identified solely by first name and last initial. *See* D.N.J. Standing Order 2021-10.

**RENÉE MARIE BUMB, Chief United States District Judge**:

This matter comes before the Court upon an appeal filed by Plaintiff Vanessa T-H. ("**Plaintiff**") seeking judicial review of a final determination of the Commissioner of the Social Security Administration (the "**Commissioner**" and the "**SSA**," respectively).  The Commissioner denied her applications for Social Security Disability Insurance (SSDI) and Supplemental Security Income (SSI).  For the reasons set forth herein, the Commissioner's decision will be **AFFIRMED** without oral argument.  *See* Fed. R. Civ. P. 78(b); L. Civ. R. 78.1(b).

## I.   PROCEDURAL HISTORY

On August 2, 2017, Plaintiff protectively filed applications for Social Security benefits under Titles II and XVI of the Social Security Act (the "**Act**"), alleging an onset date of disability beginning December 23, 2016. [Docket No. 3-3 (Administrative Record ("**R.**")), at 118.] Plaintiff's applications were first denied on January 10, 2018, and again denied upon reconsideration on May 19, 2018. [R. at 118.] On May 24, 2018, Plaintiff filed a written request for a hearing before an administrative law judge ("**ALJ**"). [R. at 118.] That hearing took place on September 26, 2019, in Pennsauken Township, New Jersey, before ALJ Trina Moore. [R. at 118.] Plaintiff did not timely appear at the hearing, but she was represented by counsel. [R. at 118.] As a result, the ALJ determined that Plaintiff had constructively waived her right to appear. [R. at 118.]

On October 16, 2019, the ALJ denied Plaintiff's claims for benefits. [R. at 115.] Plaintiff requested review of that decision by the Appeals Council, [*see* R. at 140], and it remanded due to the ALJ's constructive waiver determination, [R. at 140–41, 147]. The ALJ then held another hearing on April 12, 2021, via teleconference, and Plaintiff appeared and provided testimony. [R. at 147.] During the hearing, the ALJ also heard testimony from an impartial vocational expert (the "**VE**"). [R. at 147.] On August 12, 2021, the ALJ issued another unfavorable decision, finding that Plaintiff was not disabled. [R. at 144–62.] Plaintiff requested review of that decision, which the Appeals Council denied on February 21, 2023. [R. at 1.] The ALJ's decision thus became final. *See Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011). Accordingly, on April 25, 2023, Plaintiff timely sought this Court's review pursuant to 42 U.S.C. § 405(g). [Compl., Docket No. 1.]

## II.   LEGAL STANDARDS

### A.   Establishing Disability under the Social Security Act.

Every qualifying individual who is under a "disability" can apply for disability insurance benefits (SSDI), *see* 42 U.S.C. § 423(a)(1), and, under certain additional conditions not relevant here, supplemental security income (SSI), *see* 42 U.S.C. § 1382(a). The term "disability" generally means an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §

423(d)(1)(A); *accord id.* § 1382c(a)(3)(A). "A claimant is considered unable to engage in any substantial activity 'only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.' " *Plummer v. Apfel*, 186 F.3d 422, 427–28 (3d Cir. 1999) (quoting 42 U.S.C. § 423(d)(2)(A)); *accord* 42 U.S.C. § 1382c(a)(3)(B). The burden of proving disability is on the claimant. *Sanborn v. Comm'r of Soc. Sec.*, 613 F. App'x 171, 174 (3d Cir. 2015) (citing 42 U.S.C. § 423(d)(5)(A); 20 C.F.R. § 404.1512(a)).

To determine whether a claimant is disabled, the SSA, working through the ALJs, follows a now familiar five-step sequential analysis. See 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of proof at steps one through four, whereas the SSA bears the burden of proof at step five. *Hess v. Comm'r of Soc. Sec.*, 931 F.3d 198, 201 (3d Cir. 2019); *Plummer*, 186 F.3d at 428. The five-step sequential analysis proceeds as follows:

> At step one, the ALJ determines whether the claimant is performing "substantial gainful activity." 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If he is, he is not disabled. *Id.* Otherwise, the ALJ moves on to step two.
>
> At step two, the ALJ considers whether the claimant has any "severe medically determinable physical or mental impairment" that meets certain regulatory requirements. *Id.* §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). A "severe impairment" is one that "significantly limits [the claimant's] physical or mental ability to do basic work activities[.]" *Id.* §§ 404.1520(c), 416.920(c). If the claimant lacks such an impairment,

he is not disabled. *Id.* §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If he has such an impairment, the ALJ moves on to step three.

At step three, the ALJ decides "whether the claimant's impairments meet or equal the requirements of an impairment listed in the regulations." [*Smith v. Comm'r of Soc. Sec.*], 631 F.3d [632, 634 (3d Cir. 2010)]. If the claimant's impairments do, he is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If they do not, the ALJ moves on to step four.

At step four, the ALJ assesses the claimant's "residual functional capacity" ("**RFC**") and whether he can perform his "past relevant work." *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). A claimant's "[RFC] is the most [he] can still do despite [his] limitations." *Id.* §§ 404.1545(a)(1), 416.945(a)(1). If the claimant can perform his past relevant work despite his limitations, he is not disabled. *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If he cannot, the ALJ moves on to step five.

At step five, the ALJ examines whether the claimant "can make an adjustment to other work[,]" considering his "[RFC,] . . . age, education, and work experience." *Id.* §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). That examination typically involves "one or more hypothetical questions posed by the ALJ to [a] vocational expert." *Podedworny v. Harris*, 745 F.2d 210, 218 (3d Cir. 1984). If the claimant can make an adjustment to other work, he is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If he cannot, he is disabled.

*Hess*, 931 F.3d at 201–02 (some alterations omitted) (defined term added). The sequential analysis applies identically to applications for disability insurance benefits and supplemental security income under Title II and Title XVI of the Act, respectively. *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003); *McCrea v. Comm'r of Soc. Sec.*, 370 F.3d 357, 360 n.3 (3d Cir. 2004).[2]

---

[2] As a result, to the extent the Court does not provide a parallel citation to the Title XVI regulations, the Court observes that they operate no differently in any material way from the Title II regulations.

**B.      The District Court's Standard of Review.**

When reviewing a final decision of an ALJ regarding a claim for disability benefits, a court must uphold the ALJ's factual decisions if they are supported by "substantial evidence."  *Hess v. Comm'r of Soc. Sec.*, 931 F.3d 198, 208 n.10 (3d Cir. 2019); 42 U.S.C. §§ 405(g), 1383(c)(3).  "Substantial evidence" means "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Albert Einstein Med. Ctr. v. Sebelius*, 566 F.3d 368, 372 (3d Cir. 2009).  This threshold for evidentiary sufficiency is "not high."  *Biestek v. Beryhill*, ___ U.S. ___, 139 S. Ct. 1148, 1154 (2019). It is an extremely deferential standard.  A district court may not overturn an ALJ's decision simply because it might have reached a different conclusion.  *See Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently.") (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)).

In addition to the "substantial evidence" inquiry, the court must also ensure that the ALJ applied the correct legal standards.  *See Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000); *Friedberg v. Schweiker*, 721 F.2d 445, 447 (3d Cir. 1983).  The Court's review of legal issues is plenary.  *Hess*, 931 F.3d at 208 n.10 (citing *Chandler*, 667 F.3d at 359). After reviewing the entire administrative record, a district court may affirm, modify,

or reverse the decision of the ALJ, with or without remand to the Commissioner for rehearing.  42 U.S.C. § 405(g); *Podedworny v. Harris*, 745 F.2d 210, 221 (3d Cir. 1984).

## III.    FACTUAL BACKGROUND

The Court recites only those facts that are necessary to its determination on appeal. On August 3 and 29, 2017, Plaintiff applied for disability insurance benefits and supplemental security income, respectively, based on the following asserted impairments:  fibromyalgia; anxiety; back pain; shoulder, neck, and hand pain; mitral valve prolapse; high cholesterol; and arthritis in both knees. [R. at 322–32, 388.] Plaintiff met the insured status requirements of the Act through March 31, 2017, meaning that she must establish disability on or before that date to be entitled to disability insurance benefits. [R. at 148.] Plaintiff was 53 years old at the alleged onset date (*i.e.*, December 23, 2016). [R. at 57.]

In her decision, the ALJ adopted the below findings in support of her conclusion that Plaintiff has not been disabled within the meaning of the Act from the alleged onset date through the date of the ALJ's decision:

At Step One, the ALJ found that Plaintiff had not engaged in substantial gainful activity since December 23, 2016. [R. at 150.]

At Step Two, the ALJ found that Plaintiff suffered from the following severe impairments: degenerative disc disease of the cervical spine and degenerative arthritis of the left knee. [R. at 150.]

At Step Three, the ALJ then found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of

the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926). [R. at 153.]

At Step Four, the ALJ found that Plaintiff had the RFC: "to perform a full range of light work as defined in 20 C.F.R. § 404.1567(b) and 416.967(b)." [R. at 154.]

In light of Plaintiff's RFC, the ALJ found at Step Five that she was capable of performing past relevant work as a security guard. [R. at 161.] Accordingly, the ALJ concluded that Plaintiff was not disabled. [R. at 162.]

## IV.    DISCUSSION

Challenging the ALJ's decision, Plaintiff raises two arguments in support of remanding this case for reconsideration.  First, she contends that the ALJ "erred by omitting multiple impairments at Step Two of her determination and further compounded that error by failing to include limitations consistent with the same in the RFC." [Pl.'s Br. at 2; *see also id.* at 15–20.]  Second, she asserts that the ALJ "erred by finding multiple impairments non-severe at Step Two and further compounded that error by failing to include limitations consistent with the same in the RFC."  [*Id.* at 2; *see also id.* at 20–25.]  The Court addresses these arguments in turn.

### A.    The ALJ's Consideration of Plaintiff's Cervical and Lumbar Radiculopathy, Lumbar Degenerative Disc Disease, and Obesity.

First, Plaintiff contends that the ALJ failed to consider whether her cervical and lumbar radiculopathy, lumbar degenerative disc disease, and obesity were severe impairments and whether these impairments were consistent with an RFC to perform "light work."  [Pl.'s Br. at 15–20.]  In response, the Commissioner argues that any

failure to identify these impairments as severe or non-severe is harmless because the ALJ considered them in connection with her RFC analysis. [Def.'s Opp'n at 7–8.] In any case, Plaintiff's argument fails, the Commissioner asserts, because she has not identified any basis to conclude that additional limitations on her RFC are required. [*Id.* at 8–10.] The Court agrees: Plaintiff's first argument lacks merit.

At Step Two, the ALJ determines whether the claimant's asserted impairments are "severe." *Hess*, 931 F.3d 201 (citing 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii)). An impairment is "severe" if it " 'significantly limits [the claimant's] physical or mental ability to do basic work activities[.]' " *Id.* (citing 20 C.F.R. §§ 404.1520(c), 416.920(c)). When making this determination, the ALJ must consider every impairment a claimant identifies or about which the ALJ has received evidence. *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005); *see also* 20 C.F.R. § 404.1512(a)(1) ("[The SSA] will consider only impairment(s) [the claimant] say[s] [she] ha[s] or about which [it] receive[s] evidence."); *accord id.* § 416.912(a)(1). Moreover, the ALJ is required to consider the combined effect of the claimant's impairments, not just each asserted impairment in isolation. 42 U.S.C. § 423(d)(2)(B); *see also* 20 C.F.R. §§ 404.1520(c), 416.920(c). The inquiry is sometimes referred to as "a *de minimis* screening device" to "dispose of groundless claims," *Newell v. Comm'r of Soc. Sec.*, 347 F.3d 541, 546 (3d Cir. 2003); *see also Bowen v. Yuckert*, 482 U.S. 137, 153 (1987), as a claimant cannot be found to be disabled if she does not have at least one severe impairment, *see Hess*, 931 F.3d at 201. Thus, to satisfy Step Two, a claimant "need only demonstrate something beyond 'a slight abnormality or a combination of

slight abnormalities which would have no more than a minimal effect on an individual's ability to work.'" *McCrea v. Comm'r of Soc. Sec.*, 370 F.3d 357, 360 (3d Cir. 2004) (quoting SSR 85-28, 1985 WL 56856, at *3).

Here, the ALJ found that Plaintiff had two severe impairments: degenerative disc disease of the cervical spine and degenerative arthritis of the left knee. [R. at 150.] In so finding, the ALJ concluded that the following impairments were non-severe: fibromyalgia, mitral valve prolapse, hyperlipidemia, carpal tunnel syndrome, "fifth toe amputation" residuals, depression and anxiety. [R. at 150; *see also* R. at 150–53 (explaining reasoning).] Omitted from the ALJ's Step Two determination is any finding regarding cervical and lumbar radiculopathy, lumbar degenerative disc disease, and obesity, which Plaintiff asserts to be reversible error. [*See* Pl.'s Br. at 19.] This omission is not a basis to remand for two related reasons.

First, the ALJ's failure to identify Plaintiff's cervical and lumbar radiculopathy, lumbar degenerative disc disease, and obesity at Step Two is harmless. It is well established that any omission of an impairment at Step Two is harmless error, provided that the ALJ determines that the claimant has at least one severe impairment and continues onto the subsequent steps of the sequential analysis. *See, e.g.*, *Salles v. Comm'r of Soc. Sec.*, 229 F. App'x 140, 145 n.2 (3d Cir. 2007) ("Because the ALJ found in [Plaintiff's] favor at Step Two, even if [s]he had erroneously concluded that some of her other impairments were non-severe, any error was harmless.") (citing *Rutherford*, 399 F.3d at 553). Here, as observed above, the ALJ did not end her analysis at Step Two, so the relevant questions are whether she "considered the missing medically

10

determinable impairment[s] in the RFC determination" and whether the omission at Step Two would "otherwise affect the outcome of the case." *Friday v. Comm'r of Soc. Sec.*, 2021 WL 3879081, at *4 (D.N.J. Aug. 31, 2021); *see also Rutherford*, 399 F.3d at 553 (explaining that for remand to be required the asserted error must "affect the outcome of the case"). This inquiry follows because the RFC assessment requires consideration of "all [] [the claimant's] medically determinable impairments of which [the ALJ] [is] aware, including [the claimant's] medically determinable impairments that are not 'severe.'" 20 C.F.R. § 404.1545(a)(2); *accord id.* § 416.945(a)(2). So long as the ALJ appropriately considered the claimant's impairments in her RFC assessment, there is not typically a basis for courts to remand to address the Step-Two determination. *See, e.g., Sara W. v. Comm'r of Soc. Sec.*, 2024 WL 658047, at *4 (D.N.J. Feb. 16, 2024) (Bumb, C.J.) (determining that ALJ's failure to consider cervical spine impairment at Step Two was harmless because ALJ addressed it in connection with RFC assessment).

On this score, Plaintiff argues that despite "objective medical findings," the ALJ "simply failed to account for the Plaintiff's well documented impairments" and "did not put forth a sound rationale for their outright rejection" in connection with her RFC determination. [Pl.'s Br. at 19.] Consider Plaintiff's radiculopathy and lumbar degenerative disc disease first. Plaintiff did not disclose these impairments as a basis supporting her initial applications for disability insurance benefits or supplemental security income, [*see* R. at 322–32, 388], but Plaintiff believes that the ALJ nevertheless ignored medical evidence tending to reveal their existence, namely: an April 2017

magnetic resonance imaging (MRI) test, a September 2017 electromyography (EMG) test, a March 2021 letter from her treating physician, Dr. Peter Kuponiyi, and Plaintiff's own testimony on April 12, 2021. [Pl.'s Br. at 19 (citing R. at 630–31, 1099–100, 1576, 1886).] Not so.

Beginning with the MRI and EMG, the ALJ clearly considered and discussed this evidence. The ALJ noted that Plaintiff presented to Dr. Glenn Zuck in February 2017 complaining of neck pain and stiffness, mid and low back pain, and left shoulder, thigh, and arm pain. [R. at 155 (citing Ex. 22F at 1).] Dr. Zuck diagnosed Plaintiff with "cervical stenosis with radiculopathy and lumbar and thoracic sprain / strain," [Ex. 22F at 4], though an April 2017 MRI of the lumbar spine revealed 3 mm of anterolisthesis with disc bulge but no stenosis, [*id.* at 20]. The September 2017 EMG revealed only "mild" radiculopathy. [R. at 156 (citing Ex. 17F at 42).] Dr. Zuck's progress notes show that Plaintiff had a normal range of motion and that her strength was "5/5 in all areas tested." [R. at 155 (citing Ex. 22F at 2, 3).] Plaintiff had unremarkable gait and no significant abnormalities in her thoracic spine. [R. at 155 (citing Ex. 22F at 4).] These findings were identified in the ALJ's decision. [See R. at 155–61.] Considering other medical evidence, the ALJ noted that Plaintiff was likely experiencing pain and tenderness, but no spasms or trigger points. [R. at 156, 157, 160.] She was prescribed medication for pain management. [R. at 157.] In August 2017, Plaintiff denied back pain and joint pain and, upon examination, walked with a normal gait. [R. at 161.] The ALJ's discussion of this evidence, in combination with other record evidence, adequately supports her conclusion that Plaintiff could perform

light work.  The Court thus cannot discern a basis to find that the ALJ "failed to consider" whether radiculopathy or lumbar degenerative disc disease prevented Plaintiff from performing light work.

Dr. Kuponiyi's letter does not render the ALJ's analysis erroneous.  In his March 9, 2021, letter, Dr. Kuponiyi writes that Plaintiff "has been a patient of [his] for about 10 years" and that as of the date of the letter, Plaintiff is "permanently disabled due to multiple health conditions that include, arthritis in both her hands and knees, herniated disc in her cervical spine / lumbar spine, and fibromyalgia."  [R. at 1886 (Ex. 25 F).]  The ALJ appropriately discounted this opinion as a "well-intentioned effort to help the claimant, but . . . unpersuasive" because the substance of the opinion regards a matter reserved to the Commissioner.  [R. at 158.]  *See* 20 C.F.R. § 404.1527(d)(1) ("A statement by a medical source that [the claimant] [is] 'disabled' or 'unable to work' does not mean that [the SSA] will determine that [the claimant] [is] disabled.");  *accord id.* § 416.927(d); *see also Pearson v. Comm'r of Soc. Sec.*, 839 F. App'x 684, 688 (3d Cir. 2020) ("[T]he ALJ is not bound by the conclusion of a treating physician that the claimant is disabled or unable to work, as that decision is the ALJ's to make.");  *Prokopick v. Comm'r of Soc. Sec.*, 272 F. App'x 196, 199 (3d Cir. 2008) ("While a treating physician's opinion is certainly evidence of a patient's ability to work, it is neither conclusive nor binding on the ALJ.").  Additionally, the ALJ observed that his opinion was inconsistent with the preponderance of the evidence, which "consistently shows relatively benign clinical findings."  [R. at 158.]  She also observed that his treatment notes demonstrate "a record of ongoing management and

13

evaluation with exacerbations and remissions in the claimant's condition." [R. at 158 (citing Ex. 27F).] The Court discerns no error here. *See, e.g.*, *Sanborn v. Comm'r of Soc. Sec.*, 613 F. App'x 171, 175 (3d Cir. 2015) (affirming ALJ's analysis of treating physician's opinion where inconsistent with underlying clinical findings). The ALJ's discussion of this letter further demonstrates that she explicitly considered whether Plaintiff's diagnoses required more substantial limitations on her RFC, even if she did not identify at Step Two whether they were severe or non-severe.

Furthermore, Plaintiff's own testimony does not persuade the Court to conclude that the ALJ failed to consider her radiculopathy diagnosis or lower back disc disease in assessing her RFC. For example, during the April 2021 hearing before the ALJ, Plaintiff testified that she was unable to work in part because of herniated discs in her neck and back, "nerve damage that radiates up [her] arm," and "a lot of pain in . . . [her] knees and [] ankles." [R. at 39.] She testified to feeling a tingling, burning pain "[a]ll the time." [R. at 40.] On their own, however, Plaintiff's statements cannot establish the existence or severity of an impairment. *See* 20 C.F.R. § 404.1529(a) ("[S]tatements about [the claimant's] pain or other symptoms will not alone establish that [the claimant] [is] disabled. There must be objective medical evidence from an acceptable medical source that shows [the claimant] ha[s] a medical impairment(s)."). "An ALJ is permitted to reject a claimant's subjective testimony as long as he or she provides sufficient reasons for doing so." *Prokopick*, 272 F. App'x at 199 (first citing *Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 433 (3d Cir. 1999); then citing SSR 96-7p, 1996 WL 374186).

14

Here, the ALJ considered Plaintiff's testimony together with the other medical record evidence, including that discussed above, and determined that her subjective complaints concerning the severity, frequency, and duration of pain were overstated and did not require more substantial limitations on her RFC.  [*See* R. at 154, 155, 158–61.]  For instance, the ALJ noted that Plaintiff worked as a ticket taker until the third quarter of 2018, albeit not at substantial gainful activity levels.  [R. at 159–60.]  The ALJ permissibly determined that this activity required more movement and functioning than Plaintiff alleges she could perform.  [R. at 160.]  *See* 20 C.F.R. § 404.1571 ("The work . . . that [the claimant] ha[s] done during any period in which [the claimant] believe[s] [she] [is] disabled may show that [she] [is] able to work at the substantial gainful activity level. . . . Even if the work [the claimant] ha[s] done was not substantial gainful activity, it may show that [she] [is] able to do more work than [she] actually did.").  The ALJ also noted that treatment of Plaintiff's allegedly disabling impairments was "relatively conservative," as she did not undergo surgery or hospitalizations during the applicable period.  [R. at 160.]  Therefore, the ALJ sufficiently explained her reasoning for finding Plaintiff's complaints to be inconsistent with the objective medical evidence.  *See Prokopick*, 272 F. App'x at 199–200.

Second, Plaintiff's argument concerning the ALJ's asserted failure to consider her radiculopathy and lumbar disc disease must be rejected for a related reason.  Plaintiff has failed to explain that these diagnoses would result in any specific functional limitations.  *See Salles*, 229 F. App'x at 145 (identifying diagnoses is insufficient to establish severity at Step Two, because the claimant must also

15

demonstrate that diagnoses resulted in significant limitation on ability to do basic work activities) (citing 20 C.F.R. §§ 404.1520(c), 404.1521(a)); *Phillips v. Barnhart*, 91 F. App'x 775, 780 (3d Cir. 2004) ("A diagnosis of impairment, by itself, does not establish entitlement to benefits under the Act.  Rather, a claimant must show that the impairment resulted in disabling limitations.") (citing *Petition of Sullivan*, 904 F.2d 826, 845 (3d Cir. 1990)).  In other words, she has failed to connect the dots between an omitted medically determinable impairment (or condition) and resulting limitations on her functional capacity, consistent with her burden.  *See Louis v. Comm'r of Soc. Sec.*, 808 F. App'x 114, 117 (3d Cir. 2020) ("[A] claimant bears the burden of establishing her RFC[.]"); *Hess*, 931 F.3d at 201 (same); *see also* 20 C.F.R. §§ 404.1512(a), 416.912(a).  Plaintiff merely asserts that "[h]ad the ALJ properly considered [her] medical impairments," a reduction in her RFC to the sedentary level would be warranted, based on the Medical Vocational Guidelines. [Pl.'s Br. at 20.]  This general and speculative statement is insufficient.  A claimant must "affirmatively point[] to specific evidence that demonstrates [s]he should succeed." *Woodson v. Comm'r of Soc. Sec.*, 661 F. App'x 762, 766 (3d Cir. 2016).  Gesturing in the direction of remand will not do.

Finally, consider Plaintiff's argument concerning obesity.  [Pl.'s Br. at 19.]  Plaintiff contends that the ALJ erred because she failed to consider whether Plaintiff's body weight affected her ability to perform light work.  [*See id.* at 18–20.]  According to Plaintiff, her medical records "document ongoing issues with being overweight, including a [body mass index (BMI)] ranging between 25–30 at various points." [*Id.*

at 19 (citing R. at 630, 814, 822).]  These records refer to a BMI ranging from 25.1 to 27.04, [R. at 630, 814, 822], and as the Commissioner notes, the record elsewhere discloses a maximum BMI of 29.79 in June 2019, [Def.'s Opp'n at 9 (citing R. at 1914)].  The ALJ did not identify obesity as a medically determinable impairment and did not address any functional limitations resulting from obesity either.  [*See generally* R. at 144–62.]

As explained above, an ALJ must consider every impairment a claimant identifies or about which the ALJ has received evidence.  *Rutherford*, 399 F.3d at 552; *see also* 20 C.F.R. § 404.1512(a)(1) ("[The SSA] will consider only impairment(s) [the claimant] say[s] [she] ha[s] or about which [it] receive[s] evidence."); *accord id.* § 416.912(a)(1).  There is no dispute that obesity, when established by objective medical evidence, is a medically determinable impairment and that obesity "in combination with another impairment(s) may or may not increase the severity or functional limitations of the other impairment(s)."  SSR 19-2p, 2019 WL 2374244, at *2.  When determining whether a person has the medically determinable impairment of obesity, the ALJ must consider the claimant's weight over time, as disclosed by record evidence.  *See id.* at *3.  According to the SSA, however, the medical community defines obesity as a BMI of 30.0 or higher.  *Id.* at *2.

Here, there was no reason for the ALJ to discuss this "impairment."  First, it was not disclosed as a basis supporting Plaintiff's applications for disability insurance benefits or supplemental security income, [*see* R. at 322–32, 388], nor did she mention obesity (or, more generally, her body weight) during her April 2021 hearing as a

condition that prevented her from working, [*see* R. at 39–48]. Second, the objective medical evidence of record never disclosed a BMI exceeding 30.0, the threshold that the medical community uses to designate a person "obese." *See* SSR 19-2p, 2019 WL 2374244, at *2. As a result of these two reasons, the Court concludes that the ALJ had an insufficient basis to consider whether Plaintiff's body weight affected her ability to work. *Compare Rutherford*, 399 F.3d at 552 (affirming ALJ's decision, despite ALJ's failure to explicitly address claimant's obesity, as claimant never asserted obesity as an impairment and claimant failed to explain how ALJ's error would "affect the outcome of the case"), *with Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 504 (3d Cir. 2009) (remanding case based on ALJ's failure to analyze cumulative effects of obesity where ALJ had cited medical reports by doctors who were aware of claimant's obesity, specifically determined that claimant was severely obese, and yet omitted any discussion of combined effect of claimant's impairments despite "common sense" notion that morbid obesity would exacerbate joint dysfunction). *See also Neff v. Astrue*, 875 F. Supp. 2d 411, 422 (D. Del. 2012) ("[A] claimant's failure to allege obesity initially does not absolve the ALJ from addressing it if the ALJ is on notice of the issue."). Here, in other words, the ALJ was never placed on notice that Plaintiff's body weight was a material issue.

Two more points. The ALJ's other findings are inconsistent with Plaintiff's post-hoc argument that her body weight affected her ability to work. For instance, the ALJ repeatedly credited medical evidence that Plaintiff was fully weight bearing, able to ambulate unassisted, and had normal coordination and gait. [*E.g.*, R. at 151, 156–

57, 158.]  This evidence supports the inference that the ALJ had no reason to believe that obesity prevented Plaintiff from working.  Relatedly, Plaintiff has failed to provide any specific evidence (or argument, for that matter) explaining how her body weight affects her ability to perform light work, consistent with the applicable requirements. *See, e.g.*, 20 C.F.R. § 404.1512(a)(1) (explaining that it is the claimant's obligation to prove disability with competent evidence addressing how the claimant's impairments affect her ability to work); *id.* § 404.1521 ("[A] physical or mental impairment must be established by objective medical evidence from an acceptable medical source."); *id.* § 404.1545(a)(3) ("In general, [the claimant] [is] responsible for providing the evidence [the SSA] will use to make a finding about [the claimant's] residual functional capacity."); *accord id.* §§ 416.912(c), 416.921, 416.945(a)(3).  Therefore, for all of these reasons, Plaintiff's argument that the ALJ erred by failing to consider obesity is wholly unconvincing.  *See Woodson*, 661 F. App'x at 766 (rejecting argument that ALJ erred at Step Three because claimant "never explains how, even if the ALJ's analysis was lacking, the deficiency was harmful" and because claimant "has not affirmatively pointed to specific evidence that demonstrates he should succeed"); *see also Rutherford*, 399 F.3d at 552–53 (rejecting argument that ALJ's failure to mention obesity required remand, as claimant failed to address how obesity impairment would affect sequential analysis and claimant's functional limitations and impairments had otherwise been supported by "voluminous medical evidence").

Accordingly, because the ALJ sufficiently discussed the evidence and explained her reasoning, *see Diaz*, 577 F.3d at 504 ("The ALJ must provide a 'discussion of the

19

evidence' and an 'explanation of reasoning' for his conclusion sufficient to enable meaningful judicial review.") (quoting *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 120 (3d Cir. 2000)), and because the ALJ's decision is supported by substantial evidence, *Biestek*, 139 S. Ct. at 1154, the Court can conclude that she appropriately considered Plaintiff's cervical and lumbar radiculopathy and lumbar degenerative disc disease in finding that Plaintiff could perform "light work." There was an insufficient basis for the ALJ to address obesity, so her omission of this condition was warranted. In any case, the Court determines in the alternative that this omission is harmless. *See Rutherford*, 399 F.3d at 552–53.

**B.     The ALJ's Consideration of Plaintiff's Carpal Tunnel Syndrome, Depression, and Anxiety.**

Next, Plaintiff argues that the ALJ erred in determining that Plaintiff's carpal tunnel syndrome, depression, and anxiety were non-severe impairments consistent with an RFC to perform light work. [Pl.'s Br. at 20–25.] In other words, she challenges the ALJ's RFC determination with respect to these medically determinable impairments.[3] The Commissioner contends that substantial evidence supports the ALJ's analysis, [Def.'s Opp'n at 11–15], and this Court agrees.

A claimant's RFC is the "most [she] can do despite [her] limitations." 20 C.F.R. § 404.1545(a)(1). This determination is the sole responsibility of the ALJ, not treating

---

[3] Plaintiff does not challenge the ALJ's discussion of her other impairments—*i.e.*, fibromyalgia, mitral valve prolapse, hyperlipidemia, and fifth toe amputation residuals—which the ALJ concluded were non-severe and consistent with an RFC to perform light work. [R. at 150–53.]

physicians. *Breen v. Comm'r of Soc. Sec.*, 504 F. App'x 96, 99 (3d Cir. 2012) (citing 20 C.F.R. §§ 404.1546(c), 416.946(c)). When determining the claimant's RFC, the ALJ must include only "credibly established limitations." *Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005). "Limitations that are medically supported but are also contradicted by other evidence in the record may or may not be found credible—the ALJ can choose to credit portions of the existing evidence but 'cannot reject evidence for no reason or for the wrong reason.'" *Id.* (quoting *Mason v. Shalala*, 994 F.2d 1058, 1066 (3d Cir. 1993)). Ultimately, the ALJ must give "some indication" of the evidence that she rejects and her "reason(s) for discounting such evidence." *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 121 (3d Cir. 2000) (quoting *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981)). While the ALJ need not discuss "every tidbit of evidence included in the record," *Hur v. Barnhart*, 94 F. App'x 130, 133 (3d Cir. 2004), she must consider all relevant evidence and provide a sufficient discussion for the court to engage in a meaningful review, *Fargnoli v. Massanari*, 247 F.3d 34, 41–42 (3d Cir. 2001).

Begin with Plaintiff's carpal tunnel syndrome. The ALJ observed that a September 2017 EMG revealed Plaintiff's carpal tunnel syndrome. [R. at 150 (citing Ex. 17F).] However, the ALJ concluded that this diagnosis did not support "lasting functional loss" because other evidence in the record—both before and after the EMG—revealed that Plaintiff had a "normal" range of motion and digit strength. [R. at 150.] She cites progress notes from a February 2017 visit to Dr. Zuck, which identifies that cubital and carpal tunnel Tinel's testing was negative bilaterally, and a May 2019 medical record that identifies no musculoskeletal issues (*i.e.*, "normal"

range of motion).   [See R. at 1560 (Ex. 22F), 1386 (Ex. 20F).]   Plaintiff contends that the ALJ impermissibly relies on "current" medical evidence after her date last insured to discount her diagnosis, [Pl.'s Br. at 21], but this is plainly wrong.

Also, as noted above, the ALJ concluded that carpal tunnel syndrome was not a severe impairment because Plaintiff was working part-time as a ticket taker until the third quarter of 2018, albeit not at substantial gainful activity levels.   [R. at 150.] Principally citing her testimony at the April 2021 hearing regarding the severity of her pain, Plaintiff contends that her part-time work is not a basis to discount her diagnosis. [Pl.'s Br. at 22.]   The Court is not persuaded.   The ALJ permissibly determined that the extent of movement and functioning associated with her part-time job weighed against her, as it involved "handling, grabbing, and grasping objects."   [R. at 150.] *See* 20 C.F.R. § 404.1571 ("The work . . . that [the claimant] ha[s] done during any period in which [the claimant] believe[s] [she] [is] disabled may show that [she] [is] able to work at the substantial gainful activity level. . . . Even if the work [the claimant] ha[s] done was not substantial gainful activity, it may show that [she] [is] able to do more work than [she] actually did.").

Plaintiff also suggests that the ALJ ignored critical evidence.   For instance, a November 2017 medical record written by Dr. Richard Domsky reveals a recommendation that Plaintiff consider bilateral carpal tunnel injections.   [R. at 1088 (Ex. 17F).]   The Court has no reason to believe that the ALJ failed to consider this evidence, and she need not discuss "every tidbit of evidence included in the record." *Hur*, 94 F. App'x at 133.   Therefore, the Court identifies no basis to disturb the ALJ's

conclusion that Plaintiff's carpal tunnel syndrome was non-severe and resulted in no lasting functional limitations.

Consider next Plaintiff's mental health impairments—depression and anxiety. The ALJ determined that these impairments were non-severe at Step Two and did not result in any mental limitations on Plaintiff's ability to work.   [R. at 151, 153.] Plaintiff claims that the ALJ erred because she failed to "meaningfully consider" her mental health treatment plan, including treatment notes from counselors at Family Services Association.  [Pl.'s Br. at 23.]  The Court disagrees.

The ALJ specifically recognized that Plaintiff sought treatment for depression at Family Services Association on April 18, 2018, and that a licensed counselor diagnosed a mood disorder.  [R. at 151.]  The ALJ further observed that various counselors treated Plaintiff, but that most of the sessions focused on her physical pain and financial problems, not on her mental health.  [R. at 151.]  Although a Family Services Association counselor diagnosed Plaintiff with a mood disorder, Dr. Barbara Kelly, Ph.D., a psychologist, determined that Plaintiff had no psychiatric diagnosis, following a December 2017 examination.  [R. at 151.]  However, she opined that Plaintiff would eventually require oversight managing her funds.  [R. at 151.]  The ALJ found this latter opinion unpersuasive because Dr. Kelly concluded that Plaintiff did not have a psychiatric diagnosis and because it was inconsistent with Plaintiff's own claim that she could handle her finances.  [R. at 151–52.]

The ALJ also considered other medical records in determining that Plaintiff's mental health impairments caused no more than minimal limitation on her ability to

23

perform basic work activities.  [R. at 152.]  The ALJ noted that, in April 2018, Plaintiff began mental health therapy and was eventually prescribed Cymbalta.  [R. at 152.] She continued treatment until at least July 2019.  [R. at 152.]  According to a Family Services Association record, Plaintiff reported that the Cymbalta was helpful.  [*See* R. at 1978 (Ex. 29F) (Plaintiff stating that Cymbalta was "helpful" and that she felt "slightly less depressed"); *see also* R. at 151 (ALJ citing this record).]  Other records indicate that Plaintiff "was cooperative, had appropriate mood and affect, and had normal judgment."  [R. at 152 (citing Exs. 7F, 8F, 14F).]

After discussing this evidence, the ALJ concluded that Plaintiff's depression and anxiety were non-severe impairments.  [R. at 152.]  Adopting this finding, the ALJ indicated that she considered the "paragraph B" criteria for evaluating the impact of Plaintiff's mental disorders.  [R. at 152.]  When assessing the severity of a claimant's mental health impairments, the ALJ must rate the claimant's degree of limitation in four functional areas: (i) understanding, remembering, or applying information; (ii) interacting with others; (iii) concentrating, persisting, or maintaining pace; and (iv) adapting or managing oneself.  20 C.F.R. § 404.1520a(c)(3).  These are often referred to as the "paragraph B" criteria.  An ALJ will generally find a claimant's mental impairment non-severe if the limitations are rated as "none" or "mild."  20 C.F.R. §§ 404.1520a(d)(1), 416.920a(d)(1).

Here, the ALJ set forth a detailed analysis of the "paragraph B" criteria and concluded that each functional area resulted in a mild limitation, except for (ii) "interacting with others," which resulted in no limitation.  [R. at 152–53.]  Having

reviewed the ALJ's analysis, the Court finds no support for Plaintiff's claim that she failed to meaningfully consider the record evidence.  The ALJ's analysis is supported by substantial evidence.  *See, e.g.*, *Sara W. v. Comm'r of Soc. Sec.*, 2024 WL 658047, at *5 (D.N.J. Feb. 16, 2024) (Bumb, C.J.) (ruling that substantial evidence supported ALJ's conclusion that claimant's mental impairments were non-severe where "paragraph B" criteria adequately considered); *J.L.B. v. Comm'r of Soc. Sec.*, 2022 WL 17039305, at *5 (D.N.J. Nov. 17, 2022) (Bumb, J.) (same); *see also* 20 C.F.R. §§ 404.1520a(d)(1), 416.920a(d)(1).  As a result, the ALJ's decision to exclude any mental limitations as to Plaintiff's RFC was warranted.  *See Holley v. Comm'r of Soc. Sec.*, 590 F. App'x 167, 169 (3d Cir. 2014) (holding that when an ALJ finds that the claimant "had—at most—minor mental impairments," the ALJ did not err when the RFC included no mental limitations).

## V.     CONCLUSION

For the reasons expressed above, the ALJ's decision will be **AFFIRMED**.  An accompanying Order shall issue.


**April 16, 2024**                                      **s/Renée Marie Bumb**
Date                                                            Renée Marie Bumb
                                                                    Chief United States District Judge